443 So.2d 455 (1984)
DIVISION OF PARI-MUTUEL WAGERING, Department of Business Regulation, Robert M. Smith, Jr. and Gary Rutledge, Appellants,
v.
Clifton WINFIELD, Nigel Winfield, Nikki Winfield, a Minor, by and through Her Father and Next Friend, Malcolm Winfield and Frank Marano, Appellees.
No. 83-464.
District Court of Appeal of Florida, Fourth District.
January 11, 1984.
*456 Elliot H. Henslovitz, Staff Atty., Miami, for appellants.
Robert M. Leen and Joseph L. Schneider of Leen & Schneider, Hollywood, for appellees.
LETTS, Judge.
At issue is the power of the Pari-Mutuel Wagering Division of the Department of Business Regulation to subpoena a private citizen's bank records without notice. The trial court entered a restraining order finding that the Division improperly brought plaintiff's confidential banking records "into the realm of public scrutiny" resulting in irreparable injury. We must reluctantly reverse.
Apparently, the Division of Pari-Mutuel Wagering believed it had probable cause to suppose that this particular private citizen did not actually own the racehorses as he had reported and that his declared ownership was really a front for other members of his family and/or closely held family corporations.
The grounds for this belief are not before us, but pursuant to it, the Division subpoenaed the private citizen's bank records, those of his brother and those of various family held corporations. The subpoenas duces tecum were served on several banks, not only without notice, but with the request that the banks not advise the affected depositors that the Division had subpoenaed the information, lest it "obstruct and impede [its] efforts."
We find first that the Supreme Court of the United States has held there is no legitimate expectation of privacy in bank records because all they contain is information voluntarily conveyed to the banks and exposed to bank employees in the ordinary course of business. Thus, there is apparently no protectible Fourth Amendment privilege arising out of governmental investigative activities even though no notice is given to the depositors. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). See also Cushing v. Department of Professional Regulation, Board of Dentistry, 416 So.2d 1197 (Fla. 3d DCA 1982).
Applying the foregoing to our Horseracing Statute, we note in Section 550.02, Florida Statutes (1981), that the Division is authorized to issue subpoenas duces tecum and as a consequence we are forced to the conclusion that the Division acted within its rights in the case at bar.
Notwithstanding, neither the United States Supreme Court in the Miller case, which involved the omnipotent Internal Revenue Service, nor the Florida Supreme Court, has yet considered this question in the light of our recent amendment to the *457 Florida Constitution Article I Section 23 (effective January 1981) which ushered in a specific and powerful State right of privacy to "every natural person" thereby guaranteeing to all Florida citizens "the right to be let alone and free from governmental intrusion... ."[1] Added to this, the United States Supreme Court has made it abundantly clear that normally the individual States should decide a person's "general" right to privacy. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Accordingly, it would seem to be Florida's prerogative to decide the scope and extent of the amendment to our constitution, at least as to individuals if not corporations. We also note the Third District's strongly worded holding that a bank may not with impunity disclose the details of its customers' accounts, Milohnich v. First National Bank of Miami Springs, 224 So.2d 759 (Fla. 3d DCA 1969), though we recognize that decision did not involve an investigatory intrusion by Government. See Hagaman v. Andrews, 232 So.2d 1 (Fla. 1970).
The Division argues that to require notice be given to anyone being investigated would essentially derail all State inquiries. However, what we have here is much more than an inquiry, for it includes broadly worded subpoenas addressed to all banking statements and accounts over a stated period, owned by various members of the family and its closely held corporations. By no stretch of the imagination are they limited to transactions affecting horses, and in Johnston v. Gallen, 217 So.2d 319, 321 (Fla. 1969), the Florida Supreme Court said:
[t]he power of investigation is a necessary adjunct to the exercise of the power to legislate. But the power is not an unbridled one. It must be circumscribed by reasonable limitations and should never be used to "hunt witches."
The subpoenas before us now may, or may not, involve witch-hunts but it is hard not to label them fishing expeditions. Nonetheless we recognize the power of the legislative body to seek out and acquire needed information and we cannot find the subpoenas in question to be an unbridled exercise of that power.
It is obvious we are unhappy with our conclusion here. There is something Gestapo-like about state agencies grabbing bank records not only without notice, but with entreaties to the banks to conceal the grab. In this respect, we have uncovered through our own research new Federal legislation enacted subsequent to United States v. Miller, supra, which requires that even the IRS must give 23 days notice of any seizure of bank records. 26 U.S.C. § 7609 (1983).[2]
All this being so, and the matter being of great public importance we hereby certify the following questions to the Supreme Court:
1. DOES ARTICLE I SECTION 23 OF THE FLORIDA CONSTITUTION PREVENT THE DIVISION OF PARI-MUTUEL WAGERING FROM SUBPOENAING A FLORIDA CITIZEN'S BANK RECORDS WITHOUT NOTICE?
2. DOES THE SUBPOENAING OF ALL OF A CITIZEN'S BANK RECORDS UNDER THE FACTS OF THIS CASE CONSTITUTE AN IMPERMISSIBLE AND UNBRIDLED EXERCISE OF LEGISLATIVE POWER?
There is another point on appeal which merits discussion. The Division of Pari-Mutuel Wagering is headquartered in Dade County, yet the trial judge's ruling here considered issued from a Broward County Court. The Division alleges improper venue, claiming Dade County to be the correct forum. See Florida Public *458 Service Commission v. Triple "A" Enterprises, Inc., 387 So.2d 940 (Fla. 1980). We must also agree with this claim. As the First District opined in Commission on Ethics v. Lancaster, 421 So.2d 711 (Fla. 1st DCA 1982), an action against a State agency should normally be brought in the county where the agency maintains its headquarters unless the sword-wielder doctrine intervenes. That doctrine is not apropos here because of our reluctant conclusion that no unlawful invasion of a constitutional right is involved. Commission on Ethics v. Lancaster, supra. However, in the event the Supreme Court answers our certified questions in the affirmative, a Broward County venue would be appropriate.
We conclude with a repetition of our warning in Taggart Corporation v. Benzing, 434 So.2d 964 (Fla. 4th DCA 1983), that certified questions do not automatically go forward to the Supreme Court and there must be an exercise of affirmative initiative by the losing party.
REVERSED AND REMANDED WITH INSTRUCTIONS TO PROCEED IN A DADE COUNTY CIRCUIT COURT.
DELL, J., concurs.
GLICKSTEIN, J., concurs with opinion.
GLICKSTEIN, Judge, concurring.
I concur in the result but do not share Judge Letts' stated concerns. That the fourth amendment does not protect a bank customer's bank records from governmental scrutiny is clear. Moreover, the Florida constitution's recently adopted article I, section 23, which guarantees a natural person's right to be free from governmental intrusion, excepts contrary constitutional provisions. This exception must incorporate governmental examination of customers' bank records, for the recent amendment to article I, section 12 states that this section's search and seizure protection is coextensive with that of the federal fourth amendment as construed by the United States Supreme Court. Thus the agency's action in the instant case cannot have violated article I, section 23.
NOTES
[1] For expanded discussion, see Cope, A Quick Look at Florida's New Right of Privacy, 55 Fla.Bar J. 12 (Jan. 1981).
[2] See also 26 U.S.C. §§ 3401-3422 (1983) and Weatherly, Confidentiality of Financial Institution Customer Relation in Florida, 58 Fla.Bar J. 33 (Jan. 1984).