The Honorable Fred Lippman Chairman Committee on Regulatory Reform Florida House of Representatives 40 House Office Building Tallahassee, Florida 32301
Dear Representative Lippman:
This is in response to your request for a clarification of the use of the terms `agency' and `instrumentality' as they apply in certain circumstances to the Florida State Fair Authority which was created and constituted a public body corporate and politic by s 616.251(1), F.S. You state that the House Committee on Regulatory Reform is considering a request from the State Fair Authority to restore the term `instrumentality' in s 616.251(1), F.S., which presently provides that `the authority shall be considered an agency of the state.' The purpose for which such an amendment is being considered is to determine which term is more appropriate for the Authority, and you have requested my opinion on the following questions:
 1. IF THE AUTHORITY WISHED TO ACQUIRE STATE SURPLUS PROPERTY, WOULD IT BE ABLE TO DO SO
(a) AS AN AGENCY?
(b) AS AN INSTRUMENTALITY?
 2. IF THE AUTHORITY WISHED TO PURCHASE EQUIPMENT OR TO CONSTRUCT OR REPAIR BUILDINGS, WOULD IT BE REQUIRED TO SECURE BIDS
(a) AS AN AGENCY?
(b) AS IN INSTRUMENTALITY?
 3. IS THE AUTHORITY REQUIRED TO PUBLISH NOTICE OF ALL MEETINGS IN THE ADMINISTRATIVE WEEKLY
(a) AS AN AGENCY?
(b) AS AN INSTRUMENTALITY?
The Florida State Fair is created and constituted a public body corporate and politic for the purposes and with the powers set forth in s 616.251, F.S., et seq., and is charged with the responsibility of staging an annual fair which `shall serve the entire state.' Section 616.251, F.S. See also, s 616.255(2) and (3), F.S. (providing, inter alia, that the Authority shall promote the progress of, and stimulate public interest in the state by providing facilities for agricultural and other types of exhibitions and gatherings, and shall hold an annual fair on the Florida State Fairgrounds) and s 616.257(4), F.S., providing that all projects of the Authority shall be deemed state capitalprojects within the meaning of s 11, Art. VII of the State Constitution. Except for designated ex officio members, the members of the Authority are appointed by the Governor, subject to Senate confirmation, for terms of 4 years. Section 616.252, F.S. The Authority is authorized to sue and be sued with respect to its contractual rights and obligations and to carry out its proper purposes and functions. Section 616.254, F.S. Its duties and powers are more particularly set forth in ss 616.255-616.258, F.S. The operation of the state fair, and custody and maintenance of the buildings and grounds, is financed from the revenues derived from the state fair and other exhibits or events, revenue bonds, and lease, rental, or other charges for the use of the buildings or grounds, s 616.260, F.S., and the Authority is subject to annual auditing by the Auditor General. Section 616.263(2), F.S. Although s 616.251(1) provides that the State Fair Authority is `under the supervision of the Commissioner of Agriculture,' the Authority is not assigned to or made a part of the Department of Agriculture and Consumer Services or any subdivision or unit thereof by any provision of ss 616.251-616.265, F.S.
The state itself or in agency thereof may operate a fair or exposition in which case the agency so doing is subject to applicable statutes and regulations as to its powers, duties and liabilities. 3 C.J.S. Agriculture s 133, at 680. Compare, State v. Thursby, 150 So. 252, 253 (Fla. 1933), stating that under statutes governing a county fair association, ss 6516-6526, Comp. Gen. Laws of Florida, 1927, the fair association became a county agency to expend public money for a county purpose — for the purpose of conducting a county fair. As noted in AGO 76-185, s 6, Art. IV, State Const., which provides for the allocation of all functions of the executive branch of state government among not more than 25 departments and the administration of such departments, did not deprive the Legislature of its inherent power to determine which functions are executive and which are not; and see, 81A C.J.S. States, s 82 at 458, stating that a constitutional provision that limits the number of executive departments, does not limit the number of departments which are not in the executive branch or preclude the creation of a new quasi public corporation. The Legislature has inherent power to provide for the performance of state governmental functions and exercise its legislative power directly or through some instrumentality of the Legislature or some board or commission, created or established for such purpose. See, Florida Power Corp. v. Pinellas Utility Board,40 So.2d 350 (Fla. 1949); In re Advisory Opinion to the Governor,223 So.2d 35 (Fla. 1969); O'Malley v. Florida Insurance Guaranty Ass'n., 257 So.2d 9 (Fla. 1971); AGO 76-185; cf., State v. Lee,7 So.2d 110 (Fla. 1942); Forbes Pioneer Boat Line v. Board of Com'rs., 82 So. 346 (Fla. 1919). Absent constitutional restriction, a state may create an agency or a public corporation for the purpose of carrying out a state duty or function, and the agency so created is a class of artificial entities designated as quasi corporations. 81A C.J.S. States s 141; see also, O'Malley v. Florida Insurance Guaranty Ass'n., supra. Such agency or corporation is not an arm or agent of the state, but it is an independent entity, and the debts of such a corporation are not the debts of the state. 81A C.J.S. States s 141 at 584; and see, s616.256(8), F.S. (power to borrow money for any of Authority's authorized purposes and for expenses incidental thereto and incur obligations payable solely from *3189 revenues accruing from the operation of the Florida State Fair and from authorized activities incidental thereto); s 616.257(3) (providing that revenue bonds issued under that section shall not be deemed to be a debt of the state or to pledge the faith and credit or taxing power of the state, and moreover that state funds, other than any initial appropriation, shall not be used to construct, maintain, service, repair, purchase or lease any property or projects authorized under that section). As to the powers and functions of such a public corporation or agency, see generally, 81A C.J.S. States s 142.
It seems clear from the name of the Authority itself, `Florida State Fair Authority' (e.s.) and the above cited statutory provisions and authorities that the Legislature has created a public corporation or public quasi corporation for state purposes to carry out a state function and that such corporation is a governmental agency of the state solely for the purposes and with the powers set forth in ss 616.251-616.265, F.S., regardless of its designation as `an instrumentality of the state,' as in s616.251(1), F.S. (1979), or as `an agency of the state,' as in s616.251(1), F.S. (1981). I note that the Authority is referred to both as an `instrumentality' and `agency' in s 616.251(1), F.S. (1981). However, such `public body corporate and politic' may or may not be deemed an `agency of the state' or `state agency' for particular state statutes or particular state purposes and functions, depending on the definitional or other terms of particular statutes. As noted above, the State Fair Authority has not been assigned to or made a part of the executive branch of state government by Ch. 20, F.S., or ss 616.251-616.265, F.S. Therefore, for purposes of this opinion, I must assume that the State Fair Authority is a part of the legislative branch of government. See, AGO 76-485; cf., In re Advisory Opinion to the Governor, 223 So.2d 35 (Fla. 1969); AGO's 76-53 and 76-54. Based on and in the foregoing context, your specific questions are answered as follows.
Your first question asks whether the Authority may acquire state surplus property (a) as an `agency' of the state or (b) as an `instrumentality' of the state. State-owned tangible personal property, surplus state property and the disposition of such property is governed by Ch. 273, F.S., and rules and regulations promulgated by the Division of Surplus Property of the Department of General Services relating to the classification, certification, transfer, bidding or other disposal of state-owned tangible personal property. See, s 273.055, F.S. Section 273.01(2), F.S., defines `property' to mean all tangible personal property owned by the state. Section 273.01(1), F.S., in pertinent part defines `custodian' to mean `any . . . appointed state officer, board, commission, or authority . . . .' (e.s.) This definition, for the purposes of Ch. 273, F.S., is not limited to boards, commissions or authorities within the executive branch of state government, but rather it applies to any state board, commission or authority regardless of which of the several branches of government such state board or authority may belong or be assigned to. Therefore, the State Fair Authority, whether designated as an `agency of the state' or as an `instrumentality of the state,' may acquire state-owned tangible personal property classified and certified as surplus property as provided in s 273.055, F.S., and rules of the Division of Surplus Property adopted thereunder. The proposed restoration of the term `instrumentality' in s 616.251(1), F.S., would not alter this conclusion or affect in any way the Authority's status under and for the purposes of Ch. 273, F.S., or its acquisition of any available state surplus property pursuant thereto.
Your second question asks whether the Authority would be required to secure bids in order to purchase equipment or to construct or repair buildings (a) as an `agency' of the state or (b) as an `instrumentality' of the state.
Part I of Ch. 287, F.S., as amended, governs competitive bidding requirements for state agencies as defined by s 287.012(1), F.S. (1982 Supp.) when purchasing equipment and other personal property, see definition of `commodity' in s 287.012(2), F.S. (1982 Supp.). Section 287.012(1), F.S. (1982 Supp.) defines `agency' to mean `any of the various state officers, departments, boards, commissions, divisions, bureaus, and councils and any other unit of organization, however, designated, of the executivebranch of state government.' (e.s.) As noted above, the State Fair Authority has not been assigned to or made a part of the executive branch of state government by Ch. 20, F.S., or ss 616.251-616.265, F.S., and must be assumed to be a part of the legislative branch of government. Therefore, the Authority is not a part of the executive branch of government and is not subject to the competitive bidding requirements of Part I of Ch. 287, F.S., as amended, and for the purposes of the state purchasing law, the Authority is not an `agency' of the state within the purview of s287.012(1), F.S. (1982 Supp.). See, AGO 76-185; cf., AGO's 76-53 and 76-54.
Although s 616.256(1), F.S., empowers the Authority to acquire personal property for its authorized purposes and s 616.256(4), F.S., authorizes it to acquire personal property in its own name by purchase on such terms and conditions and in such manner as itmay deem proper, the statute does not impose any competitive bidding requirements on the Authority when making such acquisitions or purchases of equipment or other kinds of personal property. In the absence of such statutory requirement a state contract need not be awarded pursuant to public competitive bidding, but such procedure is proper even where it is not required. See, 81A C.J.S. States s 161; cf., AGO 78-19 (absent statutory requirement, county housing authority not obligated to let contract under competitive bidding or to award the contract to lowest bidder); 78-39 (municipal airport authority not required to submit leases of part of its facilities to competitive bidding absent a statute so requiring); 71-366 (noncharter county not required to let contracts under competitive bidding absent a statutory requirement therefor); 77-140 (absent charter or ordinance requirement therefor, municipality not required to take competitive bids in the purchase of commodities). The same rule of law would apply to the award of a contract to construct or repair a building or structure since s 616.256(4), which authorizes the Authority to construct, improve and repair any building or structure, does not obligate the Authority to let or award such construction or repair contracts by competitive bidding. Therefore, the proposed restoration of the term `instrumentality' in the last sentence of s 616.251(1), F.S., would not effect any *3190 change in the Authority's status as an agency of the state for purposes of ss 616.251-616.265, F.S., or as related to its purchase of equipment or the construction or repair of buildings. Thus the Authority, whether designated as an `agency of the state,' or as an `instrumentality of the state', is not under any statutory requirement to award authorized contracts for the purchase of equipment or the construction or repair of buildings pursuant to competitive bidding procedures. However, in the acquisition of professional architectural, engineering, landscape architectural or land-surveying services in connection with any of its authorized projects, the Authority is subject to and must comply with the Consultant's Competitive Negotiation Act, s287.055, F.S. This act was brought into the statutes by Ch. 73-19, Laws of Florida, and codified as s 287.055, F.S. Although the law has been subsequently amended, its definition of the term `agency' for the purposes of s 287.055 continues and remains essentially the same as originally enacted. Section 287.055(2)(b), F.S., defines `agency' to mean `the state or a state agency . . . .' Section 2(2) of Ch. 73-19, supra provided `[t]he term `agency' means the state, its agencies . . . .' This definition, for the purposes of s 287.055, F.S., is not limited to state agencies within the executive branch of state government, as is s287.012(1), F.S.; rather it applies to any agency of the state. Therefore, s 287.055, F.S., applies to the State Fair Authority whether it be designated as an `agency of the state' or as an `instrumentality of the state,' and the proposed substitution of the term `instrumentality' for `agency' in the last sentence of s616.251(1), F.S., would not affect the status of the Authority as an agency of the state for the purposes of s 287.055, F.S.
Your third question asks whether the State Fair Authority is required to publish notice of its meetings in the Florida Administrative Weekly as (a) an `agency' of the state or (b) as an `instrumentality' of the state.
Section 120.52(1)(b), F.S. (1982 Supp.) defines `agency' to mean `[e]ach other state officer and each state department, departmental unit described in s. 20.04, commission . . . board,district, and authority . . . .' (e.s.) Although it includes and refers to state departments and departmental units within the executive branch of state government, see, ss 20.02, 20.03 and20.04, F.S. (1982 Supp.), this definition for the purposes of Ch.120, F.S., is not limited to agencies of the state within the executive branch of state government, but specifically includesbut is not limited to, several agencies or boards and authorities which are not provided for in the structure of the executive branch of state government prescribed by s 20.04, F.S. The Administrative Procedure Act, Ch. 120, F.S., except where specifically provided otherwise, applies to the Public Service Commission, which has been held to be a part of the legislative or the judicial branch of government. See, In re Advisory Opinion to the Governor, supra; ASI, Inc. v. Florida Public Service Commission, 334 So.2d 594 (Fla. 1976). I also note that s616.256(10) empowers the Authority to adopt, pursuant toChapter 120, rules necessary to carry out its duties and responsibilities. Section 120.53(1)(d) requires each agency to adopt rules for the scheduling of meetings, hearings and workshops and to give not less than 7 days notice of meetings, hearings and workshops in the same manner as that prescribed for rulemaking in s 120.54(1), except for emergency meetings. Section 120.54(1)(b), among other things, provides that notices shall be published in the Florida Administrative Weekly. Section 120.55(1)(b)3., F.S. (1982 Supp.) requires the Department of State to publish the Florida Administrative Weekly which, among other things, shall contain all notices of meetings, hearings and workshops conducted in accordance with the provisions of s 120.53(1)(d), F.S.
As concluded above, the Legislature has created the State Fair Authority as a public corporation or public quasi corporation for state purposes to carry out a state function and the Authority is a governmental agency of the state for the purposes of ss616.251-616.265, F.S., regardless of its designation as an `agency' of the state or an `instrumentality' of the state. Since the definition of `agency' contained in s 120.52(1)(b), F.S. (1982 Supp.) is not limited to agencies of the state within the executive branch of state government and includes but is not limited to a number of agencies which are not a part of the executive branch of state government as structured by $20.04, F.S., I therefore conclude that the provisions of the Administrative Procedure Act, Ch. 120, F.S., apply to the State Fair Authority whether it be designated as an `agency' of the state or as an `instrumentality' of the state and the Authority is required by the provisions of s 120.53(1)(d), F.S., to publish notice of its meetings (except for emergency meetings) in the Florida Administrative Weekly in the manner prescribed by and in conformity with the provisions of ss 120.53(1)(d) and120.54(1)(b), F.S., and s 120.55(1)(b)3., F.S. (1982 Supp.), read together. The proposed substitution of the term `instrumentality' for `agency' in the last sentence of s 616.251(1), F.S., would not affect the status of the Authority as an agency of the state for the purposes of Ch. 120, F.S.
In summary, it is my opinion that the Legislature has created the State Fair Authority as a public corporation or public quasi corporation for state purposes to carry out a state function; this corporation is a governmental agency of the state solely for the purposes and with the powers set forth in ss 616.251-616.265, F.S., regardless of its designation as either an `instrumentality of the state' or an `agency of the state'; such an entity may or may not be deemed an `agency of the state' or a `state agency' for the purpose of a particular statute, depending on the definitions or other terms contained in that statute; the State Fair Authority may acquire surplus state-owned tangible personal property, and the Authority's status under Ch. 273, F.S., is not affected by its designation as either an `agency' or `instrumentality'; the proposed restoration of the term `instrumentality' to s 616.251(1) would not affect the applicability of the state purchasing law, Ch. 287, Part I, to the Authority, and it need not comply with those competitive bidding procedures when it purchases equipment or constructs or repairs buildings, but the Authority is subject to the Consultant's Competitive Negotiation Act, s 287.055, F.S., whether it be designated as an `agency' or an `instrumentality' in s 616.251(1), F.S.; in light of the definition of `agency' contained in s 120.52(1)(b), F.S. (1982 Supp.), the Authority, regardless of whether it is designated an `agency' or an `instrumentality' in s 616.251(1), is subject to Ch. 120, F.S., and is required to publish notice of its meetings in the Florida Administrative Weekly.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General